IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
April 27, 2022 Session

## STATE OF TENNESSEE v. DAVID STEWART COWLES, JR.

**Appeal from the Circuit Court for Greene County**
**No. 21CR041        John F. Dugger, Jr., Judge**

_____

**No. E2021-00603-CCA-R3-CD**

_____

Defendant, David Stewart Cowles, Jr., entered an open guilty plea to theft of property valued at $10,000 but less than $60,000 with the manner and length of the sentence to be determined by the trial court. Following a sentencing hearing, the trial court imposed a sentence of split confinement, with seven months to be served in the county jail and the remainder of the sentence on supervised probation. On appeal, Defendant argues that the trial court abused its discretion in imposing a sentence of split confinement and in denying a community corrections sentence. After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J. and ROBERT L. HOLLOWAY, JR., J., joined.

Francis X. Santore, Jr., Greeneville, Tennessee, for the appellant, David Stewart Cowles, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Garrett D. Ward, Assistant Attorney General; Dan E. Armstrong, District Attorney General; and Ritchie Collins, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The Greene County District Attorney General filed a criminal information charging Defendant with theft of property valued at $10,000 but less than $60,000 on May 14, 2021. Defendant waived an indictment and agreed to proceed by criminal information. The charge arose from Defendant's meticulous theft of funds from the

Greeneville Police Department ("GPD") and the Greene County Sheriff's Office ("GCSO") between 2015 and 2018.

Defendant entered an open guilty plea to theft of property valued at $10,000 but less than $60,000, a Class C felony, with the trial court to determine the manner and length of the sentence. The guilty plea hearing and sentencing hearing also took place on May 14, 2021.

During the plea colloquy, the trial court explained to Defendant his rights and reviewed the plea agreement. Defendant confirmed that he understood the rights he was waiving and the terms of his plea agreement. The parties stipulated to the following facts as provided by the State:

The GPD hired Defendant as a computer specialist in 2011. In 2014, Defendant also began working for the GCSO. Between January 2017 and August 2018, Defendant purchased approximately 34 items from Amazon with a Greene County credit card. Both agencies terminated Defendant's employment in 2018. A new GCSO sheriff and GPD police chief searched for Defendant's Amazon purchases and could not locate the items. The agencies also became concerned Defendant was "double-dipping in his employment," and asked the Tennessee Comptroller of the Treasury ("Comptroller's Office") to perform an official investigation.

The investigation revealed that Defendant submitted receipts to the Greene County accounting office that contradicted information received from Amazon. Amazon's records revealed Defendant purchased all of the items on his personal account with the county credit card. Defendant modified the Amazon invoices to reflect that the items shipped to the agencies when they actually shipped to his home. The purchases included a hot tub, Xbox-related equipment, and other items all together totaling $29,554.14. The investigation also revealed that Defendant billed the GPD and the GCSO for the same work hours between January 2015 and July 2018, for approximately $19,490.46. The trial court asked Defendant if he agreed with these facts and Defendant answered, "Yes[.]"

At sentencing, Defendant again affirmed the State's factual summary and disputed nothing. Defendant testified that he had already begun gathering restitution and wanted to answer for his actions. Defendant said he currently worked at a golf course he co-owned. He confirmed that the golf course was a good source of revenue for his family. In regard to his prior criminal record, Defendant testified that he wrote a bad check when he was 18 years old. Defendant testified that he had a good relationship with his wife. He affirmed that he had never used illegal drugs and rarely drank alcohol. Defendant

testified that he had autism, diabetes, high blood pressure, and diagnosed stress and depression. Defendant also said that he had asthma and suffered from sleep apnea.

Defendant testified that he volunteered at the GPD until he was officially hired in 2011. He worked to update the technological capabilities of the GPD. Defendant claimed he was not appreciated at work and "at some point . . . it was just enough and [he] started doing what [he] was doing." Defendant testified that he was sorry for his actions and that he was not making an excuse.

On cross-examination, Defendant admitted that he "misplaced" the agencies' trust. Defendant acknowledged that the Greene County citizens paid for his salary. Defendant said that he held himself out to the public as law enforcement. Defendant first testified that he gave away the Amazon purchases to "people," but later admitted that he sold some of the items back on Amazon. Defendant acknowledged that the citizens of Greene County paid for his purchases. On redirect examination, Defendant stated that he was paying restitution because "it [was] the right thing to do."

Jimmy Hodges of the Comptroller's Office testified regarding his investigation of Defendant. Mr. Hodges testified that his office subpoenaed Amazon with Defendant's credit cards and received Defendant's transaction history. After comparing the Amazon transaction history to the Greene County accounting office's records, Mr. Hodges noticed discrepancies between the records. Mr. Hodges believed Defendant altered the invoices. Mr. Hodges said his office found that Defendant purchased a drone, a train set, and Dyson hand dryers. He tracked the items purchased to Defendant's personal address, the golf course, and a relative. Mr. Hodges also examined Defendant's time sheets and noted that he "double-dipped" 1592 hours.

GPD Police Chief Tim Ward testified that his department searched for the Amazon purchases, could not find them, and contacted the Comptroller's Office. He testified that "[i]t was very demoralizing" when the department found out about Defendant's actions. He and the other officers felt that Defendant violated their trust. Chief Ward testified that Defendant prioritized his own personal gain over the well-being of the police department. On cross-examination, Chief Ward said he was unaware of any leaks of confidential information.

GCSO Sheriff Wesley Holt testified that he fired Defendant because they no longer needed his services. After he dismissed Defendant, Sheriff Holt reviewed the department's inventory and noticed discrepancies between the department's inventory and the purchase slips. Sheriff Holt called the Comptroller's Office. Sheriff Holt testified that Defendant set their office "back at least two years, three years." On cross-examination, Sheriff Holt testified that he was unaware of any compromised information.

After hearing the witnesses' testimonies and arguments of counsel, the trial court applied enhancement factors (3) and (14) because Defendant embezzled funds from two different agencies and abused a position of public trust. *See* T.C.A. § 40-35-114(3), (14). The trial court applied great weight to Defendant's breach of trust. The trial court applied mitigating factor (1) finding Defendant's actions did not cause or threaten to cause serious bodily injury. *See* T.C.A. § 40-35-113(1).

The trial court considered judicial diversion. After weighing all of the diversion factors, the court found that the circumstances of the offense and the deterrence value to the accused weighed heavily against judicial diversion. The court said, "you were in a special highly trained position of doing computers. Everybody trusted you. . . . then you responded every way in the world to come up with ways to benefit and that's what you did[.]"

In denying full probation, the trial court placed "much weight" on whether a sentence of full probation would unduly depreciate the seriousness of the offense and whether confinement would serve as an effective deterrent to others likely to commit similar offenses. The trial court denied a sentence of community corrections based on the the seriousness of the offense and the overall effect of Defendant's actions on the criminal justice system. The trial court imposed a four-year sentence of split confinement with Defendant to serve seven months in the county jail and the remainder of the sentence suspended to supervised probation. Defendant timely appeals.

*Analysis*

Defendant argues on appeal that the trial court abused its discretion in imposing a sentence of split confinement and in denying his request for a community corrections sentence. The State responds that the trial court did not abuse its discretion. We agree with the State.

When the record establishes that the trial court imposed a sentence within the appropriate range that reflects a "proper application of the purposes and principles of our Sentencing Act," this Court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The same standard of review applies to a trial court's decision regarding "probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012); *see also State v. King*, 432 S.W.3d 316, 325 (Tenn. 2014) (applying the same standard to judicial diversion). This Court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and

principles listed by statute." *Bise*, 380 S.W.3d at 709-10. Moreover, under those circumstances, we may not disturb the sentence even if we had preferred a different result. *See State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). The party appealing the sentence has the burden of demonstrating its impropriety. T.C.A. § 40-35-401, Sent'g Comm'n Cmts.; *see also State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

Tennessee Code Annotated section 40-35-102(3)(C) provides that "[p]unishment shall be imposed to prevent crime and promote respect for the law by . . . [e]ncouraging effective rehabilitation of those defendants, where reasonably feasible, by promoting the use of alternative sentencing and correctional programs that elicit voluntary cooperation of defendants[.]" Tennessee Code Annotated section 40-35-104(c)(9) authorizes a "sentence to a community based alternative to incarceration . . . ." Additionally, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed," and "[t]he length of a term of probation may reflect the length of a treatment or rehabilitation program in which participation is a condition of the sentence[.]" T.C.A. § 40-35-103(5).

On the other hand, sentences involving confinement should be based on the following considerations:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1). Moreover, the sentence imposed "should be no greater than that deserved for the offense committed" and also "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." T.C.A. § 40-35-103(2), (4).

A defendant is eligible for probation if the sentence imposed is 10 years or less. T.C.A. § 40-35-303(a). Although "probation shall be automatically considered by the court as a sentencing alternative for eligible defendants," the defendant bears the burden of "establishing suitability" for probation. T.C.A. § 40-35-303(b). "This burden includes demonstrating that probation will 'subserve the ends of justice and the best interest of

both the public and the defendant.'" *Carter*, 254 S.W.3d at 347 (quoting *State v. Housewright*, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)). A defendant who is sentenced as an especially mitigated or standard offender and who has committed a Class C, D, or E felony should be "considered as a favorable candidate for alternative sentencing options" if certain conditions are met. T.C.A. § 40-35-102(5), (6)(A). The guidelines regarding favorable candidates are advisory. T.C.A. § 40-35-102(6)(D).

Generally, to deny alternative sentencing solely on the basis of the seriousness of the offense, "'the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree, and the nature of the offense must outweigh all factors favoring a sentence other than confinement." *State v. Trotter*, 201 S.W.3d 651, 654 (Tenn. 2006) (quoting *State v. Grissom*, 956 S.W.2d 514, 520 (Tenn. Crim. App. 1997)). Additionally, in *State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000), our supreme court noted five factors to consider when denying probation on the basis of deterrence and held that a trial court may impose a sentence of incarceration based solely on a need for deterrence "when the record contains evidence which would enable a reasonable person to conclude that (1) deterrence is needed in the community, jurisdiction, or state; and (2) the defendant's incarceration may rationally serve as a deterrent to others similarly situated and likely to commit similar crimes." *Id.* at 10-13.

However, in *State v. Sihapanya*, 516 S.W.3d 473, 476 (Tenn. 2014), the Tennessee Supreme Court determined that "the heightened standard of review [from *Trotter* and *Hooper*] that applies to cases in which the trial court denies probation based on only one of these factors is inapplicable" when the trial court "combined the need to avoid depreciating the seriousness of the offense with the need for deterrence and the nature and circumstances of the offense."

Here, the trial court considered the principles of sentencing, the presentence report, the parties' arguments, the nature of the offense, and the testimony from the hearing. In considering whether to grant a sentence of full probation, the trial court incorporated by reference its judicial diversion analysis. The court determined that the seriousness of the offense and the need to deter other computer specialists from committing similar offenses merited a sentence of split confinement. We conclude that the trial court did not abuse its discretion in sentencing Defendant to split confinement. Defendant is not entitled to relief.

The trial court also recognized Defendant's eligibility for a community corrections sentence but denied it based on the seriousness of the offense. The trial court noted Defendant's abuse of public trust and the effect of his actions on the public perception of the criminal justice system and police departments.

Under Tennessee Code Annotated section 40-36-106(a)(1), Defendant would be eligible for punishment in the community. *See* T.C.A. § 40-36-106(a)(1); *State v. Scottie R. Buckles,* No. E2016-01645-CCA-R3-CD, 2017 WL 2334232 (Tenn. Crim. App. May 30, 2017) ("In the present case, [d]efendant would be eligible for traditional community corrections because he otherwise would be incarcerated in a correctional institution; stands convicted of property related, nonviolent felony offenses; did not possess or use a weapon; and does not have a past pattern or behavior of violence."), *no perm. app. filed*.

However, "[o]nce determining that an offender is eligible for a community corrections sentence, the court, applying the sentencing considerations set forth in [Tennessee Code Annotated section] 40-35-103 and general sentencing guidelines, determines whether the offender is *entitled* to a sentence under the Community Corrections Act." *State v. Grigsby*, 957 S.W.2d 541, 547 (Tenn. Crim. App. 1997) (emphasis added). It is clear that the trial court considered the purposes and principles of sentencing, the seriousness of the offense, and the overall effect of Defendant's actions on the public before denying a sentence on community corrections. We cannot say that the trial court abused its discretion in denying Defendant a sentence of community corrections. Defendant is not entitled to relief.

*Conclusion*

Based on the foregoing, we affirm the judgment of the trial court.

_____
TIMOTHY L. EASTER, JUDGE

- 7 -